IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| INFORMATION EXCHANGE TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>ENTERTAINMENT BENEFITS GROUP, LLC,<br><br>Defendant. | Civil Action No. 7:25-cv-00491<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Information Exchange Technologies LLC ("IET") files this Complaint against Entertainment Benefits Group, LLC ("EBG" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.  This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 8,682,894 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8682894 |
| 2. | 7,987,168 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7987168 |

2.  Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.  Plaintiff is a limited liability company formed under the laws of Texas with its

registered office address located in Austin, Texas.

4. Upon public information and belief, Entertainment Benefits Group, LLC is a corporation organized under the laws of Delaware with its corporate headquarters located at 19495 Biscayne Boulevard Suite 300, Aventura, Florida 33180.

5. EBG may be served through its registered agent for service, CT Corporation System, which is located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

6. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained an established and regular places of business in this District and have committed acts of patent infringement in this District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10. Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District, in this State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here,

to customers and potential customers located in this state, including in this District, and in the United States.

11. Defendant maintains regular and established places of business in this District.

12. Upon information and belief and based upon public information, Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities at locations in this District, including, but not limited to, facilities at the following address: Echelon III, Suite 100, 9420 Research Boulevard, Austin, Texas 78759.

13. Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, Defendant has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Texas residents and consumers.

14. Upon information and belief, Defendant ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities, to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

15. Defendant markets, sells, and delivers Accused Products in this district, and has

committed acts of infringement in this District.

16. Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products in an infringing manner.

17. Defendant has committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

18. Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

19. IET repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

20. Based on public information and belief, Defendant owns, operates, advertises, and/or controls the website https://www.undercovertourist.com/ and associated hardware, software, and functionality that, among other features, allows its users to compare and book theme park tickets, cruises, hotels, and tickets to other attractions and live events. Defendant uses, causes to be used, provides, supplies, operates, or distributes one or more websites, including, but not limited to, https://www.undercovertourist.com/ and any other websites, devices and hardware, software, and functionality that comprise substantially similar functionality (collectively, the "Accused Products").

21. Based on public information and belief, the Accused Products perform a method for managing web information on a computer; a method for using a software application to make

an information portal distinct from the application display search results the information portal allowing entry of query terms, generating corresponding address query strings to retrieve the search results for display by the information portal, the address query strings including the query terms and additional terms specific to the information portal; and methods associated with performing and/or implementing the same.

22. Based on public information and belief, the Accused Products are available on the Defendant's website and through its app, which users may access through phones, tablets, or computers, including but not limited to the phones, tablets, or computers used by the Defendant's employees and customers.

23. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,987,168

24. IET repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

25. The USPTO duly issued U.S. Patent No. 7,987,168 (the "'168 patent") on July 26, 2011, after full and fair examination of Application No. 11/399,851 which was filed on April 8, 2006. The '168 patent is entitled "Method for Managing Information."

26. IET owns all substantial rights, interest, and title in and to the '168 patent, including the sole and exclusive right to prosecute this action and enforce the '168 patent against infringers and to collect damages for all relevant times

27. IET or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '168 patent.

28. The claims of the '168 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

inventive components that improve upon the function and operation of web browsers and online information retrieval systems by enabling automated, simultaneous searches across multiple websites through self-generated query templates that learn and adapt to each site's unique structure.

29. For example, claim 2 of the '168 patent recites "[a] method for using a software application to make an information portal distinct from the application display search results, the information portal allowing entry of query terms, generating corresponding address query strings to retrieve the search results for display by the information portal, the address query strings including the query terms and additional terms specific to the information portal, the method of using the application comprising: receiving, in the software application, a query term for which results are to be displayed by the information portal; generating, in the software application, an address query string including the query term, the address query string being generated from a query string template identifying a query term location and including the additional terms specific to the information portal; communicating the address query string to the information portal; and displaying the search results generated by the information portal based on the address query string; wherein the search results displayed by the information portal are the same search results that would have been displayed if the query term had been entered into the information portal, and the information portal had generated the address query string."

30. The written description of the '168 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

31. Defendant has directly infringed the claims of the '168 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 2 of the '168 patent. As just one example of infringement, Defendant, using the Accused Products, performs a method of using a software application (e.g., the Undercover Tourist App) to make an information portal (e.g., theater website) distinct from the application display search results, the information portal allowing entry of query terms (e.g., date of show, location, number of tickets, etc), generating corresponding address query strings (e.g., Request URL) to retrieve the search results for display by the information portal, the address query strings including the query terms (e.g., start_date, end_date, quantity, etc.) additional terms (e.g., terms appended to information portal URL) specific to the information portal. Defendant performs a step of receiving, in the software application, a query term for which results are to be displayed by the information portal. Defendant receives, in the software application (e.g., Undercover Tourist app), a query term (e.g., City, State, Venue, Date Range, etc.) for which results are to be displayed by the information portal. Defendant performs a step of generating, in the software application, an address query string including the query term, the address query string being generated from a query string template identifying a query term location and including the additional terms specific to the information portal. Defendant generates, in the software application (e.g., Undercover Tourist app), an address query string including the query term, the address query string being generated from a query string template (e.g., different for each theater website) identifying a query term location (e.g., https://www.broadway.com/) and including the additional terms (e.g., start_date, end_date, etc.) specific to the information portal. Defendant performs a step of communicating the address query string to the information portal. Defendant communicates the address query string to the

information portal (e.g., theater website), e.g., to retrieve search results from the information portal. Defendant performs a step of displaying the search results generated by the information portal based on the address query string; wherein the search results displayed by the information portal are the same search results that would have been displayed if the query term had been entered into the information portal, and the information portal had generated the address query string. Defendant displays the search results generated by the information portal based on the address query string. The search results displayed by the information portal are the same search results that would have been displayed if the query term had been entered into the information portal, and the information portal had generated the address query string. *See* '168 Evidence of Use Charts attached hereto as **Exhibit A**.

32. Defendant has also indirectly infringed and continues to indirectly infringe the '168 patent by inducing others to directly infringe the '168 patent. Defendant has induced end-users, including but not limited to its employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '168 patent by providing the Accused Products for their use. Defendant has taken active steps, directly or through its contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '168 patent, including, for example, claim 2 of the '168 patent. Such steps by Defendant include, among other things, advising or directing end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '168 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use

of the Accused products by others would infringe the '168 patent. Defendant's infringement in this regard is ongoing.

33. On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights).

34. Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant

35. Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '168 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

36. IET has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IET in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of one or more claims of the '168 patent. Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,682,894**

38.     The USPTO duly issued U.S. Patent No. 8,682,894 (the "'894 patent") on March 25, 2014, after full and fair examination of Application No. 13/602,653 which was filed September 4, 2012. The '894 patent is entitled "Method for Managing Information."

39.     IET owns all substantial rights, interest, and title in and to the '894 patent, including the sole and exclusive right to prosecute this action and enforce the '894 patent against infringers and to collect damages for all relevant times.

40.     IET or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '894 patent.

41.     The claims of the '894 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of web browsers and online search systems by allowing users to search and retrieve information from multiple websites at once through an automated, unified interface.

42.     For example, claim 1 of the '894 patent recites "[a] method for managing web information on a computer," which includes "adding, by a user of the computer through a user interface, a plurality of information portals within at least one information category, wherein each information portal corresponds to at least one website; generating an information location identifier template for each of the plurality of information portals such that each of the plurality of information portals recognizes the corresponding location identifier template for effecting a search on each of the plurality of information portals; displaying, through the user interface, to the user at least one data entry field for entering a query term by the user; receiving the query term entered into the displayed at least one data entry field; creating a separate corresponding query string for each of the plurality of information portals based on the corresponding information location

identifier template; communicating with each of the plurality of information portals to send the corresponding query string and to retrieve search results associated with the received query term; and displaying the search results generated by the at least one information portal in the format specific to the at least one information portal."

43. The written description of the '894 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

44. Defendant has directly infringed the claims of the '894 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '894 patent. As just one example of infringement, Defendant, using the Accused Products (e.g., the Undercover Tourist website), performs a method for managing web information on a computer. This method includes performing a step of adding, by a user of the computer through a user interface, a plurality of information portals within at least one information category, wherein each information portal corresponds to at least one website. Defendant adds, through a user interface, a plurality of information portals (e.g., Cruise Line websites) within at least one information category (e.g., Cruise Lines), wherein each information portal corresponds to at least one website (e.g., specific to a Cruise Line). Defendant performs a step of generating an information location identifier template for each of the plurality of information portals such that each of the plurality of information portals recognizes the corresponding location identifier template for effecting a search on each of the plurality of information portals. Defendant generates

an information location identifier template (e.g., Cruse Line website URL) for each of the plurality of information portals such that each of the plurality of information portals recognizes the corresponding location identifier template for effecting a search on each of the plurality of information portals. Defendant performs a step of displaying, through the user interface, to the user at least one data entry field for entering a query term by the user. Defendant displays, through the user interface, to the user at least one data entry field (e.g., Destination/River, Sailing Dates, Length, etc.) for entering a query term by the user. Defendant performs a step of receiving the query term entered into the displayed at least one data entry field. Defendant receives the query term entered into the displayed at least one data entry field (e.g., selections made by a user). Defendant performs a step of creating a separate corresponding query string for the plurality of information portals based on the corresponding information location identifier template. Defendant creates a separate corresponding query string for each of the plurality of information portals based on the corresponding information location identifier template (e.g., to search a plurality of cruise line sites). Defendant performs a step of communicating with each of the plurality of information portals to send the corresponding query string and to retrieve search results associated with the received query term. Defendant communicates with each of the plurality of information portals to send the corresponding query string and to retrieve search results associated with the received query term (e.g., to get cruise line options). Defendant performs a step of displaying the search results generated by the at least one information portal in the format specific to the at least one information portal. Defendant displayes the search results generated by the at least one information portal in the format specific to the at least one information portal (e.g., by using the cruise line specific logo for each cruise line option). *See* '894 Evidence of Use Charts, attached hereto as **Exhibit B**.

45. Defendant has also indirectly infringed and continues to indirectly infringe the '894 patent by inducing others to directly infringe the '894 patent. Defendant has induced end-users, including but not limited to its employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '894 patent by providing the Accused Products for their use. Defendant has taken active steps, directly or through its contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '894 patent, including, for example, claim 1 of the '894 patent. Such steps by Defendant include, among other things, advising or directing end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '894 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused products by others would infringe the '894 patent. Defendant's infringement in this regard is ongoing.

46. On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights).

47. Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant

48. Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '894 patent was, has been, and continue to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's

rights under the patent

49. IET has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IET in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

50. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of one or more claims of the '894 patent. Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## **JURY DEMAND**

51. Plaintiff hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

52. WHEREFORE, Plaintiff requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

   a. Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

   b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents,

and; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents, and by such entities;

c. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 24, 2025        Respectfully submitted,

By: */s/James F. McDonough, III*

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, GA 30312
Telephone (404) 564-1866
Email: jim@rhmtrial.com

**Attorneys for Plaintiff**
**INFORMATION EXCHANGE TECHNOLOGIES, LLC**

*Admitted to the Western District of Texas

**List of Exhibits**

- **Exhibit A** – Evidence of Use Regarding Infringement of U.S. Patent No. 7,987,168

- **Exhibit B** – Evidence of Use Regarding Infringement of U.S. Patent No. 8,682,894

**List Of Supportive Links**

1. U.S. Patent No. 8,682,894, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8682894

2. U.S. Patent No. 7,987,168, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7987168