**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| INFORMATION EXCHANGE TECHNOLOGIES LLC,<br><br>      *Plaintiff*,<br><br>    v.<br><br>ENTERTAINMENT BENEFITS GROUP, LLC,<br><br>      *Defendant*. | **Civil No. 7:25-CV-00491-DC-DTG**<br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANT'S MOTION TO TRANSFER UNDER § 1404(a)</u>**

**TABLE OF CONTENTS**

                                                                                                          **Page**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 1

        A.      ENTERTAINMENT BENEFITS GROUP, LLC .................................................... 2

        B.      INFORMATION EXCHANGE TECHNOLOGIES LLC ...................................... 2

III.    BECAUSE THE AUSTIN DIVISION IS CLEARLY MORE CONVENIENT, THIS
        COURT SHOULD TRANSFER THE CASE. ................................................... 3

        A.      Legal Standard. ........................................................................................ 3

        B.      This Action Could Have Been Brought in the Austin Division ............................. 4

        C.      Private Interest Factors Favor Transfer to Austin Division. .................................. 5

                1.      The "relative ease of access to sources of proof" factor favors transfer. ..... 5

                2.      The "compulsory process" for unwilling witnesses factor favors
                        transfer given the ex-employees living in Florida. .................................... 6

                3.      "Cost of attendance for willing witnesses" heavily favors transfer—
                        EBG's identified witnesses are in the transferee forum ............................ 8

                4.      The early stages of litigation and serial nature of the cases make the
                        "other practical problems" factor neutral .................................................. 9

        D.      The "Interest of Justice Prong" Favors Transfer .................................................. 10

                1.      The "court congestion" factor favors transfer because of this case's
                        lack of urgency and the Austin Division's lower caseload. ...................... 10

                2.      Because all the employees who are involved with the website work
                        in Austin, the "local interest" factor favors transferring .......................... 11

                3.      The remaining factors are neutral. ............................................................ 12

IV.     CONCLUSION .................................................................................................... 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867, 877 (E.D. Tex. 2013) ..............................................................................9

*In re Apple Inc.*,
No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) .............................................7, 11

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
No. 4:13-CV-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) (Mazzant, J.) .........................10

*Chrimar Sys., Inc. v. Netgear, Inc.*,
2016 WL 197947 (E.D. Tex. Jan. 15, 2016) .............................................................................7

*In re Dish Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) .....................................................7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................5, 6, 8

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
No. 217CV00100JRGRSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017) .......................5, 12

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ................................................................................................10

*Groupchatter, LLC v. Landis + Gyr Techs., LLC*,
2016 WL 541516 (E.D. Tex. Feb. 11, 2016) ................................................................9, 10, 11

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ...............................................................................................3, 4

*Realtime Data, LLC v. Fujitsu Am., Inc.*,
No. 616CV01035RWSJDL, 2017 WL 772699 (E.D. Tex. Feb. 28, 2017) ...............................7

*In re Samsung Electronics Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ....................................................................................................3

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .....................................................................................................................4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017) ...................................................................................................................4

## TABLE OF AUTHORITIES

**Page(s)**

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ..................................................................................5

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)...............................................................................................4

*In re Verizon Bus. Network Servs. Inc.*,
   635 F.3d 559 (Fed. Cir. 2011)................................................................................9

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ............................................................................3, 8

*In re Volkswagen of Am.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................................3, 7

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................3, 4, 8

## I.    INTRODUCTION

This case belongs in the Austin Division of the Western District of Texas and should be transferred thereto. Not only does Entertainment Benefits Group LLC ("EBG") have a regular and established place of business in Austin, but Information Exchange Technologies LLC's ("IET") business address is there. *See* Dkt. 1 ("Compl.") at ¶ 3; *see also* Ex. A. IET accuses an EBG website and mobile app called "Undercover Tourist"—the entire Undercover Tourist team works in Austin, and the website and app have been and continue to be developed there. Indeed, the only relevant employee witnesses with knowledge of the accused technologies that EBG has identified are located in Austin. Further, all relevant documents are located in or accessible from Austin. And because EBG maintains a place of business in Austin, other likely witnesses, including those related to finance and marketing, may be located there or would be able to more easily travel there as opposed to Midland-Odessa.

This case has no apparent connection with the Midland-Odessa Division of the Western District of Texas. Indeed, IET itself is located in Austin and the company has no apparent facilities or operations in the Midland-Odessa Division. Because *all* involved entities lack relevant ties to Midland-Odessa, and because almost all sources of proof are located in Austin or are more easily accessible there, this Court should transfer the case to Austin.

## II.    BACKGROUND

IET sued EBG in the Midland-Odessa Division of the Eastern Western of Texas on October 24, 2025, alleging that EBG infringed patents assigned to IET. IET's alleged infringement claims relate to websites that allow users to compare and book events, lodging, and tickets; functionality that was not developed in Midland-Odessa, was not and is not maintained or supported from Midland-Odessa, and implicate servers that do not reside in Midland-Odessa. *See* Compl. at ¶ 4. Each patent that IET asserts—U.S. Patent Nos. 7,987,168, and 8,682,894 (the "Asserted

Patents")—comprises only method claims. *See* Compl. ¶¶ 31, 44. IET alleged that EBG infringes claims 1, 2, 6, 7, 9, 10, 11, 16, and 17 of the '168 Patent and claims 1, 2, 3, 4, 6, 7, and 9 of the '894 Patent. IET defined the "Accused Products" that infringed these claims as "one or more websites, including, but not limited to, https://www.undercovertourist.com/ and any other websites, devices and hardware, software, and functionality that comprise substantially similar functionality," where "functionality" presumably refers to features that "allows [the websites] users to compare and book theme park tickets, cruises, hotels, and tickets to other attractions and live events." *See* Compl. at ¶ 20. Accordingly, EBG understands the Accused Products to be the www.undercovertourist.com website (the "Undercover Tourist website") and associated functionality.

### A.   ENTERTAINMENT BENEFITS GROUP, LLC

EBG is incorporated in Delaware and headquartered in Florida. Reynardus Decl. ¶ 3. Relevant witnesses for EBG, who developed and continue to work on the Undercover Tourist website, are located in Austin. Reynardus Decl. ¶¶ 3–6. For example, EBG employees Ian Ford and Jenny Alley have been co-head of the Undercover Tourist website for thirteen years and both currently reside in Austin. *Id.* Current Vice President of Engineering of the Undercover Tourist website, Steve Broumley, also currently resides in Austin. *Id.* Undercover Tourist website's Senior Engineer Nate Pinchot and Vice President of Marketing Allyson Click both also currently reside in Austin. *Id.*

### B.   INFORMATION EXCHANGE TECHNOLOGIES LLC

IET is a Texas based Limited Liability Company. *See* Compl. at ¶ 3. From its Austin registered office to its Austin based counsel, *id.*, nothing ties IET to Midland-Odessa outside of its litigation history. IET's managing members Timothy Salmon and Daniel Mitry appear to reside in New Jersey. *See* Ex. A.

III.   **BECAUSE THE AUSTIN DIVISION IS CLEARLY MORE CONVENIENT, THIS COURT SHOULD TRANSFER THE CASE.**

A.   **Legal Standard.**

Defendants may move to transfer legal actions to venues that are clearly more convenient than the one filed in. 28 U.S.C. § 1404(a). In deciding motions to transfer patent infringement actions under § 1404(a), the courts apply regional circuit law. *In re Samsung Electronics Co.*, 2 F.4th 1371, 1375 (Fed. Cir. 2021).

In the Fifth Circuit, the movant must first establish that the case could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once established, courts next determine which forum is most convenient by examining a number of private and public interest factors, none of which are to be given dispositive weight. *Id*.  The private factors include (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public factors include (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

Under these factors, "the Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *In re Nintendo Co*., 589 F.3d 1194, 1200 (Fed. Cir. 2009). In fact, the option of transfer specifically tempers the plaintiff's privilege in choosing the appropriate venue. *In re Volkswagen of Am*., 545 F.3d 304, 313 (5th Cir. 2008) ("*Volkswagen II*"). In every case, § 1404(a) requires "individualized, case-by-case consideration of convenience and

3

fairness" to the parties. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The proposed transferee forum is "clearly more convenient" where, as here, the overwhelming majority of witnesses and other evidence is concentrated in and around the transferee district, and little or no evidence is found in the transferor district. *See, e.g.*, *In re Nintendo*, 589 F.3d at 1198 (holding that, in cases "featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer").

**B.     This Action Could Have Been Brought in the Austin Division.**

As required by § 1404(a), this action could have been brought in the Austin Division of the Western District of Texas ("Austin Division"). The Austin Division would have jurisdiction over EBG on account of the business it regularly conducts in the jurisdiction, the facilities it maintains (including a large corporate office), and its Austin based employees. Reynardus Decl. ¶¶ 3–6. Further, because of the convenience of the Austin Division, EBG will not contest jurisdiction there for this case.

Venue is also proper in the Austin Division. Here, if the facts pleaded in the Complaint could support venue in Midland-Odessa, then they can support venue in Austin. EBG has a regular and established place of business in Austin, and it is the Undercover Tourist website and mobile app, developed and supported from EBG's Austin office, that is accused of infringement. Reynardus Decl. ¶ 5–6; *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 258 (2017).

4

C.      Private Interest Factors Favor Transfer to Austin Division.

1.      The "relative ease of access to sources of proof" factor favors transfer.

This factor heavily favors transfer because evidence related to the Accused Products is located in the Austin Division, not the Midland-Odessa Division. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The physical location of relevant evidence remains an important factor, despite technological advances that allow for sharing data. *Id*. (citing *Volkswagen II*, 545 F.3d at 316) (noting ignoring the physical location of evidence would render this factor superfluous). As a result, this factor favors transfer when places having relevant evidence—like the headquarters of the entity in charge of the allegedly infringing product—are in the transferee venue. *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 217CV00100JRGRSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017). Further, this factor favors transfer when accessing electronic data (e.g., source code) is easier in the transferee venue, where most of the engineering team is based. *In re TikTok, Inc*., 85 F.4th 352, 359 (5th Cir. 2023).

Here, EBG's Austin office—the EBG location most closely associated with the Undercover Tourist website and app—is in the transferee division, the Austin Division. Reynardus Decl. ¶¶ 3–6. To the extent there are any physical documents or otherwise, they would be either located in the Austin Division, or more easily accessible from there. *Id.* Further, the development associated with the Undercover Tourist website and app is done in Austin. *Id.* Each of the asserted claims is a method claim that implicates the Undercover Tourist website, and thus requires functionality performed by a server. (*See* Compl.) Because the asserted claims will necessarily involve an inquiry into EBG's servers, the Austin-based servers being in the Austin Division compared to Midland-Odessa makes the former more convenient. Reynardus Decl. ¶¶ 3–6. Further,

relevant confidential information may not be readily accessible from Midland-Odessa, but would be accessible from Austin.

EBG does not have any servers, documents, or other sources of proof related to the Accused Products in Midland-Odessa. Reynardus Decl. ¶¶ 7–12. Further, EBG did not perform any work related to the development or operation of the Undercover Tourist website in Texas. *Id.* In fact, nothing indicates that any relevant evidence is in Midland-Odessa. *Id.* And because Plaintiff is incorporated in Austin, s*ee* Compl. at ¶ 3, it is similarly unlikely to have any evidence located in the Midland-Odessa under this factor—indeed, its evidence would also likely be located in Austin. The principals of IET list addresses in Far Hills, New Jersey and Ridgewood, New Jersey, on IET's certificate of formation. Ex. A. There are multiple daily non-stop flights from Newark Liberty International Airport in Newark, New Jersey to Austin-Bergstrom International Airport in Austin, Texas. *E.g.*, Ex. B. However, there are no non-stop flights from Newark Liberty International Airport in Newark, New Jersey to Midland International Air and Space Port—indeed, many flights depart from LaGuardia, on the other side of New York City from New Jersey, and not from Newark, and all flights require a connection, typically in Houston or Dallas. *E.g.*, Ex. C. Courts have repeatedly held that this factor favors transfer when presented with similar facts. *Genentech*, 566 F.3d at 1340–41 (transferor venue "indisputably ha[d] no connection to any of the witnesses or evidence relevant to the cause of action").

### 2.    The "compulsory process" for unwilling witnesses factor favors transfer given the ex-employees living in Florida.

Because the relevant time period begins almost six years ago, relevant witnesses who were involved with the Undercover Tourist website may no longer work for EBG. At least some of them, however, may be subject to the Austin Division's absolute subpoena power based on currently available information. The Fifth Circuit considers the "absolute subpoena power" of the

6

district courts when considering applicability of this factor. *Volkswagen II*, 545 F.3d at 316. And because [insert] is a third party over whom EBG exercises no control, he is presumed to be an unwilling witness. *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at \*3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at \*3 n.1 (Fed. Cir. Sept. 25, 2018)). The Austin Division may have subpoena power over potentially relevant ex-employees from EBG from the damages period, as they are more likely to be within the district than outside it given that Undercover Tourist has been based in Austin for thirteen years. *See Realtime Data, LLC v. Fujitsu Am., Inc.*, No. 616CV01035RWSJDL, 2017 WL 772699, at \*4 (E.D. Tex. Feb. 28, 2017) (finding this factor favored transferring due in part to the presence of former employees in the district). Thus, this factor favors transferring.

Additionally, because IET has not identified any potential unwilling witnesses within the present forum's absolute subpoena power, this factor favors transferring. *See In re Apple Inc.*, No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) (holding the district court erred in considering an inventor's presence in the forum where it had not shown he was an unwilling witness). And even if it could identify some relevant, unwilling witnesses, this factor would likely still favor transferring. *See Chrimar Sys., Inc. v. Netgear, Inc.*, No. 6:15-CV-634 JRG-JDL, 2016 WL 197947, at \*4 (E.D. Tex. Jan. 15, 2016) (finding the compulsory-process factor was neutral where the plaintiff identified two witnesses in the forum and the defendant identified one witness in the transferee forum). The present facts present a stronger case for transferring than in *Chrimar*—given the known current and potential ex-employees with relevant information who

7

have already been identified in the transferee district, Reynardus Decl. ¶¶ 3–6, it is unlikely that IET will be able to identify the same or greater number of unwilling witnesses in Midland-Odessa.

### 3. "Cost of attendance for willing witnesses" heavily favors transfer—EBG's identified witnesses are in the transferee forum.

The "single most important factor in transfer analysis" is the convenience to and cost for the witnesses to travel and attend trial. *Genentech*, 566 F.3d at 1343. Under the Fifth Circuit's 100-mile rule, "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205. Here, the distance between Midland-Odessa and Austin is over the 100-mile threshold, so retaining this dispute in Midland-Odessa will cause key witnesses, such as current and former development engineers and other employees who have knowledge of the design, development, and testing of the UndercoverTourist website from the relevant time period—to travel for this case. Reynardus Decl. ¶¶ 3–6. Because employees from EBG would incur personal and business costs associated with retaining the case in this forum, this factor weighs heavily in favor of transferring.

All of EBG's witnesses are either located in the Austin Division or can more conveniently travel there than to Midland-Odessa. As previously explained, witnesses with knowledge of the Undercover Tourist website, who work at EBG, are likely located in Austin, not Midland-Odessa. [Reynardus Decl. ¶¶ 3–6. In particular, Ian Ford, Co-Head of the Undercover Tourist website is located within the Austin Division. *Id.* Jenny Alley, the other Co-Head, is also located within the Austin Division. *Id.* Other possible technical witnesses who worked on the design and

8

development of the Accused Products—for example, the engineering team responsible for maintaining and updating the Undercover Tourist website—are in the Austin Division. *Id.* For any EBG employee witness who is not located in the Austin Division, that district would still be more convenient because any such employee can work out of EBG's corporate office. *Id.* As far as it is aware, EBG has never employed individuals with knowledge about the Undercover Tourist website in Midland-Odessa, and thus, none of EBG's likely witnesses are there. *Id.* ¶¶ 7–12. Also, unlike Austin, EBG does not have any office space in Midland-Odessa making work and travel inconvenient for any of EBG's employee witnesses. *Id.* ¶¶ 7–12.

Further, because IET and its counsel are based in Austin, s*ee* Compl. at ¶ 3, Austin is likely a more convenient forum for the Plaintiff, too. It is admittedly unclear what fact witnesses IET intends to call given that it has never developed or sold a product that practiced any claims of the Asserted Patents. Austin is easier to travel to than Midland-Odessa. Thus, for any witnesses located in Austin or outside of Austin, Austin is a far more convenient forum than Midland-Odessa.

Under the Fifth Circuit's 100-mile guideline, because most material witnesses reside within the Austin Division, and no witnesses reside in Midland-Odessa, this factor weighs heavily in favor of transfer. *See, e.g.*, *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (concluding that transferee forum was far more convenient than the Eastern District where many witnesses resided in transferee forum, and none resided within 100 miles of the plaintiff's chosen forum).

### 4. The early stages of litigation and serial nature of the cases make the "other practical problems" factor neutral.

The current case is in its infancy, having not reached discovery nor claim construction. Accordingly, no substantive ruling gives this Court a greater familiarity with the Asserted Patents than the Austin court. *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 877 (E.D. Tex. 2013)

("[T]he Court is not persuaded by Plaintiff's suggestion that the additional cases pending in this district weigh against transfer . . . Plaintiff has not demonstrated that the Court has experience with or is familiar with the patents in *this* case."). The absence of any substantial actions taken in this court favor transferring. In *Auto. Body Parts*, an Eastern District of Texas court found this factor favored transferring despite discovery having started and the court having ruled on standing issues. *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 4:13-CV-705, 2015 WL 123852, at *6 (E.D. Tex. Jan. 7, 2015) (Mazzant, J.). Here, discovery has not started, and the only other motions filed in this court have sought an extension while the parties investigated the facts. (Dkt. 10). Also, IET has filed no other cases in the Midland-Odessa Division. Accordingly, judicial economy does not merit keeping this case in Midland-Odessa.

>       **D.       The "Interest of Justice Prong" Favors Transfer.**

>              **1.       The "court congestion" factor favors transfer because of this case's lack of urgency and the Austin Division's lower caseload.**

This factor either slightly favors transferring or is neutral. For this factor to disfavor transferring, the plaintiff must show some urgency as to why an earlier resolution is necessary. *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (concluding this factor was neutral where the patentee did not practice the patent and gave no facts supporting the need for urgent resolution). But IET has not showed any urgency at all. Here, it is "undisputed that" IET "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *Id.*

Because the Austin Division has more judges, this factor may slightly favor transferring. But even if it does not, given the absence of a clear disparity, the metrics provide no reason to override the other factors. *See Groupchatter, LLC v. Landis + Gyr Techs., LLC*, No. 6:15-CV-886

10

JRG-JDL, 2016 WL 541516, at *6 (E.D. Tex. Feb. 11, 2016) ("This factor is the most speculative, and cannot alone outweigh other factors." (citing *Genentech*, 566 F.3d at 1347)).

> ## 2. Because all the employees who are involved with the website work in Austin, the "local interest" factor favors transferring.

Austin has a local interest in this case, not Midland-Odessa. The location where employees work with the accused technology has a "local interest" in deciding those issues. *See id.* In *Groupchatter*, this factor favored transfer where the defendant had "identified several individuals whose work relates to the accused technology and who are located in the" transferee location and where the plaintiff had "not identified any local interest" in the original forum. *Id.* Here, just like in *Groupchatter*, *id.*, EBG employees who worked with the website during the relevant timeframe reside in Austin. Reynardus Decl. ¶¶ 3–6. Because EBG has employees "whose work and reputation are being called into question by allegations of infringement" in the Austin Division— and because IET has identified no local interest in Midland-Odessa—this factor heavily favors transferring. *Groupchatter*, 2016 WL 541516 at *6.

This case does not raise any issue of local significance for Midland-Odessa. IET has no ties to this division. And aside from possible users, EBG does not have any website related ties to this district. Whether this suit succeeds or fails has little impact on the people and businesses here.

Any services EBG may provide in the Midland-Odessa Division do not change the analysis. The "assessment of the local interest factor must focus on whether there are 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (citations omitted). Here, "[n]othing in . . . the record offers any indication that [EBG's] in-district [provided services] had any involvement in the research, design, or development of the accused technology." *Id.* Indeed, they have nothing to do research, design, or development of the website at all. Reynardus Decl.

11

¶¶ 7–12. There are no EBG locations in Midland-Odessa that have access to data relevant to the current proceeding (e.g., EBG's confidential, financial, and executive information), which EBG's corporate office has access to. Reynardus Decl. ¶¶ 7–12.

### 3. The remaining factors are neutral.

The "familiarity of the forum with the law that will govern the case" and "avoidance of unnecessary problems of conflict of laws" factors are neutral in patent cases, and this case has presented no reasons that counsel departure from that trend. "Patent claims are governed by federal law, and both courts are capable of applying that law to infringement claims." *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 217CV00100JRGRSP, 2017 WL 4076052, at *5 (E.D. Tex. Sept. 14, 2017) (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)).

## IV.    CONCLUSION

At least four of the factors favors transfer, and three of those four, including the "Cost of attendance for willing witnesses" factor, heavily favors transfer. Of the remaining factors, two are clearly neutral, while the other two factors either slightly favor transfer, slightly disfavor transfer, or are neutral. Accordingly, transfer is appropriate. Thus, EBG requests this Court transfer this dispute to the Austin Division for the parties' convenience.

12

Dated: April 3, 2026

Respectfully Submitted,

By:  */s/ Riley J. Green*

Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Ricardo J. Bonilla
Texas Bar No. 24082704
rbonilla@fr.com
Noel Chakkalakal
Texas Bar No. 24053676
chakkalakal@fr.com
Riley J. Green
Texas Bar No. 24131352
rgreen@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile

**COUNSEL FOR DEFENDANT
ENTERTAINMENT BENEFITS GROUP, LLC**

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail this 3rd day of April, 2026.

*/s/ Riley J. Green*
Riley J. Green

## CERTIFICATE OF CONFERENCE

I hereby certify counsel for Defendant conferred with counsel for Plaintiff. Counsel for Plaintiff indicated they are opposed to the relief sought in this motion.

*/s/ Riley J. Green*
Riley J. Green

14